## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Monica Snyder, | Civil No. 16-458 (DWF/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| American Family Insurance Company, | |
| Defendant. | |

Edward E. Beckmann, Esq., Hellmuth & Johnson PLLC, counsel for Plaintiff.

Darwin S. Williams, Esq., American Family Insurance, counsel for Defendant.

## INTRODUCTION

After a foundation wall collapsed in Plaintiff Monica Snyder's ("Snyder") home, Snyder filed a claim with her insurer, Defendant American Family Insurance Company ("American Family"). American Family denied coverage. Thereafter, Snyder demanded an appraisal of her loss—as provided under the parties' insurance contract—but American Family declined to appoint an appraiser. Snyder then filed this lawsuit. The Court now considers Snyder's Motion to Compel Appraisal Hearing (Doc. No. 10) and American Family's Motion for Summary Judgment (Doc. No. 19).

Under the Minnesota Supreme Court's controlling opinion in *Quade v. Secura Insurance*, 814 N.W.2d 703 (Minn. 2012), the Court grants Snyder's motion to the extent the motion seeks to compel appraisal. The Court, however, finds no basis for concluding

that American Family has waived its contractual right to appoint an appraiser, and it therefore denies Snyder's motion in all other respects. In addition, because the Court finds that Snyder has a right to appraisal under the parties' insurance contract, the Court denies American Family's motion for summary judgment.

## BACKGROUND

**I.     The Policy**

This case involves a homeowners insurance policy, effective July 12, 2015 through July 12, 2016, that American Family issued to Snyder to insure Snyder's home (the "Policy"). (Doc. No. 13 ("Beckmann Decl.") ¶ 3, Ex. C ("Policy").) Among other coverages, the Policy provides Supplementary Coverage for loss arising out of the collapse of a building or any part of a building to the extent the collapse is a result of certain causes enumerated in the Policy. (Policy at 3-4 (Supplementary Coverages – Section I, ¶ 1).) One of the enumerated causes is "hidden decay." (*Id.*)

While the Policy provides this coverage for collapse-related losses, it also specifies that it does not cover losses arising out of certain risks that could, theoretically, cause collapse. For example, the Policy does not cover loss resulting from "wear and tear," "deterioration," and "settling, cracking, shrinking, bulging, or expansion of . . . foundations [and] walls." (*Id.* at 5 (Perils Insured Against – Section I, ¶ 6).) Further, it includes an exclusion for "water below the surface of the ground . . . includ[ing] water which exerts pressure on . . . any part of a building . . . ." (*Id.* at 7 (Exclusions –

Section I, Part A, ¶ 9).) And, it has an exclusion for "faulty, inadequate or defective" "construction" and "design."[1] (*Id.* (Exclusions – Section I, Part C, ¶ 2).)

Finally, in addition to coverages and exclusions, the Policy provides an appraisal process to resolve disputes between the insurer and insured regarding the "amount of loss." (*Id.* (Conditions – Section I, ¶ 2).) The Policy states, in part:

> If **you** and **we** fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. If either party fails to select an appraiser within 20 days, the other party may, upon 5 days written notice to the failing party, make application to have a presiding judge of the district court of the county in which the loss has occurred appoint an appraiser for the failing party.

(*Id.*) Once each party has an appraiser, the two appraisers choose an umpire. (*Id.*) The two appraisers "separately set the amount of loss" and "submit their differences"—if any—to the umpire. (*Id.*) "Written agreement signed by any two of these three [the two appraisers and the umpire] will set the amount of the loss." (*Id.*)

## II. Snyder's Claim and This Lawsuit

On or about July 15, 2015, a portion of a basement wall in Snyder's home collapsed. (Doc. No. 14 ("R. Snyder Decl.") ¶ 2.) The parties dispute the cause of the collapse, but Snyder argues that the collapse resulted from hidden decay.[2] (Doc. No. 12

---

[1] While the Court summarizes and quotes from various provisions of the Policy, the Court does not decide the scope of any coverage or the application of any exclusion.

[2] The Court notes that American Family objects to the admission of several declarations submitted by Snyder in support of her position on causation. At this time,

(Footnote Continued on Next Page)

at 2; Doc. No. 25 at 5-6; *see also* Doc. No. 15 ¶¶ 3-4; Doc. No. 26 ¶ 3; Doc. No. 27 ¶ 2; Doc. No. 28 ¶ 2.)  On the same day, Snyder filed a claim with American Family, and two days later, American Family inspected Snyder's loss.  (R. Snyder Decl. ¶ 2.)  On July 17, 2015, American Family denied Snyder's claim in a letter, asserting that "groundwater causing wear and tear, deterioration, settling, cracking, shrinking, bulging, and the expansion of foundation" caused the collapse of the basement wall.  (Beckmann Decl. ¶ 1, Ex. A ("Denial Letters") at 4.)  According to the denial letter, the Policy does not cover such loss.  (*Id.*)  On August 28, 2015, after receiving a report from Snyder's engineering expert, American Family sent Snyder a second denial letter, this time asserting that the Policy does not cover losses caused by the "inadequate construction" of the basement wall.  (*Id.* at 6.)

In November 2015, Snyder's son, Rick Snyder, mailed a letter to American Family demanding appraisal of Snyder's loss and naming Clyde Rath as Snyder's appraiser.  (R. Snyder Decl. ¶ 3.)  On or about January 21, 2016, after American Family failed to appoint an appraiser in response to Snyder's demand, Snyder commenced this lawsuit in Dakota County District Court.  (Doc. No. 1 ("Notice of Removal").)

Snyder's Complaint asserts three causes of action, all based on American Family's failure to appoint an appraiser:  (1) declaratory judgment; (2) breach of the parties'

---

(Footnote Continued From Previous Page)
the Court declines to decide the admissibility issue and takes no position with respect to causation of the collapse.

insurance contract; and (3) violation of Minnesota's standard fire insurance policy, Minn. Stat. § 65A.01.  (*Id.* ¶ 2, Ex. 1 ("Summons & Compl.").)  The Complaint seeks injunctive and declaratory relief including:  (1) an order compelling appraisal; and (2) an order denying American Family the right to an appraiser, or alternatively, an order appointing an appraiser on American Family's behalf.  (*Id.*)  In addition, Snyder asks that the Court retain jurisdiction and enforce any future appraisal award.  (*Id.*)  On February 23, 2016, American Family removed the lawsuit to this Court.  (Notice of Removal.)

On March 22, 2016, American Family requested a "signed, sworn proof of loss" with information about Snyder's loss, including damage estimates.  (Doc. No. 22 ("Williams Aff.") ¶ 9, Ex. 8.)  On May 31, 2016, after receiving an extension from American Family, Snyder provided the requested "proof of loss" form.  (*Id.* ¶¶ 10-11, Ex. 9.)  On June 17, 2016, American Family advised Snyder that it had selected Lon Erlandson as its appraiser.  (*Id.* ¶ 12, Ex. 10.)

## DISCUSSION

### I.     Snyder's Motion to Compel Appraisal

#### A.     Legal Standard

Although Snyder refers to her motion as one to compel appraisal, the Court analyzes it as a motion for partial summary judgment.  *See McCoy v. Am. Family Mut. Ins. Co.*, --- F. Supp. 3d ----, Civ. No. 15-4336, 2016 WL 3022072, at *3 (D. Minn. May 25, 2016) (analyzing motion to compel appraisal as motion for partial summary judgment); *St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*, Civ.

No. 13-1977, 2013 WL 6190400, at *3-4 (D. Minn. Nov. 27, 2013) (same); *see also Dewall v. Am. Family Mut. Ins. Co.*, Civ. No. 15-1954, 2015 WL 5719143, at *1 (D. Minn. Sept. 29, 2015).

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Snyder's Entitlement to Appraisal**

First, the Court addresses Snyder's request that this Court order the parties to participate in the appraisal process pursuant to the appraisal provision in the Policy.

6

Under the Policy, if the parties "fail to agree on the amount of loss, either may demand an appraisal of the loss." (Policy at 7 (Conditions – Section I, ¶ 2).) American Family protests that it is not required to participate in appraisal under this provision, because the parties do not disagree on the "amount of loss" but rather disagree on the causation of the loss and the Policy's coverage or exclusion of the loss. American Family is incorrect.

Quite simply, the Minnesota Supreme Court addressed this question in *Quade*, which held that the phrase "amount of loss" permits an appraiser to determine causation. *Quade v. Secura Ins.*, 814 N.W.2d 703, 704 (Minn. 2012). In *Quade*, the insurer denied the insured's claim for storm damage to the roofs of three buildings, claiming that the damage resulted from inadequate maintenance—rather than a storm—and therefore was not covered. *Id.* The insurance policy at issue, like the Policy in this case, provided for an appraisal process if the parties failed to agree on the "amount of loss." *Id.* Construing that provision, the court explained, "in the insurance context, an appraiser's assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss, and the amount it would cost to repair that loss." *Id.* at 706. Further, the court stressed that "[a]ppraisal is generally understood to be a condition precedent to suit." *Id.* at 708.

*Quade* controls this case. In *Quade*, the insured and insurer disputed the cause of the roof damage—storm winds or poor maintenance—and therefore disputed the insurance policy's coverage of the damage. In this case, Snyder and American Family dispute the cause of the wall collapse—hidden decay or groundwater, deterioration, and faulty construction—and therefore dispute the Policy's coverage of the loss. The cases

7

are factually analogous, and *Quade*'s holding obligates this Court to compel American Family to engage in appraisal. Indeed, multiple judges in this District have followed *Quade* when faced with a motion to compel appraisal similar to the motion filed by Snyder. *See McCoy*, 2016 WL 3022072, at *4-5; *Condos. of Shenandoah Place v. SECURA Ins.*, Civ. No. 15-165, 2016 WL 614381, at *3-4 (D. Minn. Feb. 16, 2016); *Dewall*, 2015 WL 5719143, at *1. The Court, therefore, grants Snyder's motion to the extent that it seeks an order compelling appraisal.

### C. American Family's Right to Appoint an Appraiser

Second, the Court addresses Snyder's request that the Court deny American Family the right to an appraiser or, alternatively, appoint an appraiser for American Family without American Family's input. Under the Policy, if a party demands appraisal, "each party will choose a competent appraiser within 20 days." (Policy at 7 (Conditions-Section I, ¶ 2).) If a party fails to select an appraiser within that period, "the other party may, upon 5 days written notice to the failing party, make application to have a presiding judge of the district court of the county in which the loss has occurred appoint an appraiser for the failing party." (*Id.*)

#### 1. American's Family Right to an Appraiser

To begin, Snyder argues that American Family has waived its right to an appraiser; thus, appraisal should occur with Snyder's appraiser and an umpire chosen by Snyder's appraiser. In support, Snyder cites the Minnesota Supreme Court's opinion in *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 220 N.W. 425, 427 (Minn. 1928), in which the

8

court found that an insurer waived the opportunity to participate in appraisal. In that case, the insured demanded appraisal and designated an appraiser. *Id.* at 426. When the insurer failed to appoint an appraiser in response to the insured's demand, the district court appointed an umpire, at the insured's request. *Id.* The insured then appeared before the single appraiser and the umpire, who jointly determined the amount of the insured's loss. *Id.* The insured subsequently sued to enforce the award determined by the appraiser and umpire, and the court concluded that the findings of the appraiser and umpire as to amount of loss were "just as conclusive as if the [insurer] had participated." *Id.* at 427.

In the Court's view, *Itasca Paper* stands for the narrow proposition that, if an appraisal proceeds without an appraiser appointed by the insurer, the findings of the appraisal board are still conclusive. *See id. Itasca Paper* does not, however, hold that an insured waives the right to an appraiser in any circumstance when it declines to appoint an appraiser in response to an appraisal demand. Indeed, the appraisal procedure outlined in the Policy expressly contemplates two appraisers, who jointly choose an umpire and who separately determine the amount of loss. The Policy simply does not contemplate an appraisal with only one appraiser.

Snyder also cites Minn. Stat. § 65A.12, subd. 1, which states: "Any person who shall not, within 20 days after written request, appoint a qualified appraiser, as provided in the policy, shall at the election of the other party be deemed to have waived the right to appraisal, and, if it be the insurer, shall be liable to suit." In other words, if the insurer

does not appoint an appraiser within the 20-day period, the insured may elect to deem the insurer's right to appraisal waived. The statute does not, however, provide that the insured, while insisting on appraisal, may elect to deem the insurer's right to an appraiser waived. The Court, therefore, rejects Snyder's request for an order denying American Family's right to an appraiser.

### 2. American Family's Right to Choose an Appraiser

In the alternative, Snyder requests that this Court appoint an appraiser on behalf of American Family without any input from American Family. Under the Policy, the party that does not fail to appoint an appraiser may request that a county district judge appoint an appraiser for the failing party, so long as the non-failing party gives advance notice to the failing party. In this case, however, Snyder does not explain whether this Court—which is not a county district court—has authority under the Policy to appoint an appraiser, and she does not explain how this Court would choose an appraiser. Indeed, Snyder essentially declines to address this alternative request for relief in her briefs. In these circumstances, the Court rejects Snyder's request for an order appointing an appraiser on American Family's behalf and instead directs the parties to comply with the Policy's appraisal provision. *See McCoy*, 2016 WL 3022072, at *5 (granting motion to compel appraisal and directing parties to comply with insurance policy's appraisal provision); *Dewall*, 2015 WL 5719143, at *1 (granting motion for partial summary judgment and directing parties to comply with insurance policy's appraisal provision).

**II.     American Family's Motion for Summary Judgment**

Finally, the Court addresses American Family's motion for summary judgment, to which the summary judgment standard explained above applies.  American Family argues that the Policy does not cover Snyder's loss, because the collapse was caused by groundwater, visible deterioration, and faulty construction—all of which trigger exclusion under the Policy.  Snyder contends that the collapse was caused by hidden decay and therefore the Policy covered the loss.

This Court need not determine the cause of the collapse of Snyder's basement wall, and it need not decide whether the Policy covers Snyder's loss.  Rather, because the Court concludes, as explained above, that the parties must participate in appraisal, American Family's motion must fail.  As noted in *Quade*, appraisal is a condition precedent to filing suit.  *Quade*, 814 N.W.2d at 708.  Accordingly, causation will be determined in appraisal, and once appraisal is complete, the parties may, if necessary, request that the Court determine the scope and application of the Policy's coverage.  *See id.* at 706 ("We generally agree that appraisers have authority to decide the 'amount of loss' but may not construe the policy or decide whether the insurer should pay.").  The Court, therefore, denies American Family's motion for summary judgment but notes that American Family may, once appraisal is complete, move for summary judgment as to construction of the Policy and American Family's liability under the Policy.

## CONCLUSION

Because the Minnesota Supreme Court's opinion in *Quade* controls this case, the Court grants Snyder's motion to the extent that it requests the Court to order the parties to engage in appraisal as provided in the Policy.  Indeed, multiple judges in this District have rejected the argument that American Family puts forth in this case—that it need not comply with the Policy's appraisal provision if it denies coverage to an insured.  That said, the Court denies Snyder's request that it deny American Family the right to an appraiser or the right to choose its own appraiser.  The Court also denies American Family's motion for summary judgment at this time but notes that American Family may move for summary judgment once the appraisal process is complete.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff Monica Snyder's Motion to Compel Appraisal Hearing (Doc. No. [10]) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a.      Snyder's Motion is **GRANTED** to the extent that it requests an order compelling American Family to participate in the appraisal process.  As such, the parties shall comply with the appraisal provision in the Policy (Policy at 7 (Conditions – Section I, ¶ 2)).  Each party shall have seven (7) days from the date of this Order to identify its appraiser, after which the two appraisers shall jointly choose an umpire.

        b.      Snyder's Motion is **DENIED** in all other respects.

    2.      Defendant American Family Insurance Company's Motion for Summary Judgment (Doc. No. [19]) is **DENIED**. However, after appraisal is complete, American Family may, if necessary, move again for summary judgment in this case, provided that American Family files such motion in compliance with all scheduling orders issued by the Court.

    3.      The Court stays this litigation until the completion of the appraisal process—namely, when the "amount of loss" is set by the two appraisers or by one appraiser and the umpire, as provided by the Policy (Policy at 7 (Conditions – Section I, ¶ 2)). The parties shall contact the Court within seven (7) days of the completion of the appraisal process.

Dated:  October 3, 2016                  s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge